UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOA DUC NGUYEN,<br><br>Petitioner,<br><br>v.<br><br>MARCOS CHARLES, et al.,<br><br>Respondents. | No. 1:25-cv-01592-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Petitioner Hoa Duc Nguyen's ("Petitioner") request for injunctive relief.[1] (ECF No. 1.) Respondents Marcos Charles, Pamela Bondi, Kristi Noem, and Todd Lyons (collectively "Respondents") filed an opposition. (ECF No. 12.) Petitioner replied. (ECF No. 13.) For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction.[2]

---

[1]  Initially, Petitioner filed this action pro se. (ECF No. 1.) Although the Court has since appointed the Federal Defender to represent him (ECF Nos. 9–11), the Court liberally construes Petitioner's initial pro se filing. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2]  Petitioner requested immediate injunctive relief as a part of his petition for writ of habeas corpus filed November 19, 2025. (ECF No. 1). On November 21, 2025, the Court notified the parties that it construed Petitioner's request for injunctive relief as a motion for temporary restraining order and set a briefing schedule. (ECF No. 6.) In their opposition brief, Respondents waived a hearing and stated they have no objection to converting the instant motion into a preliminary injunction. (ECF No. 12 at 1 nn.1–2.) The parties have fully briefed the issues and, as discussed below, the standard for preliminary injunction and temporary restraining orders are the same. Thus, the Court treats the instant motion as one for preliminary injunction.

1

### I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Petitioner is a 59-year-old citizen and native of Vietnam. (ECF No. 12 at 1, 34.) In 1975, in the aftermath of the Vietnam War, Petitioner was admitted to the United States as a refugee and became a lawful permanent resident. (*Id.* at 30.) In 1997, Petitioner left the United States to elude criminal charges. (*Id.* at 30, 37.) Upon his return in 2003, the Department of Homeland Security deemed his permanent residency status abandoned, and he was paroled into the country to face criminal charges. (*Id.*) Ultimately, Petitioner pleaded guilty to various crimes committed between 1993 and 1996 and served his sentence. (*Id.* at 8–10.)

As a result of his criminal convictions, Petitioner was placed into removal proceedings as an "inadmissible" non-citizen under the Immigration and Nationality Act ("INA") §§ 212(a)(2)(A)(i)(I) and 212(a)(2)(B). (*Id.* at 31, 37–38.) On June 17, 2024, Petitioner received a final order of removal to Vietnam and was taken into immigration custody. (*Id.* at 12; ECF No. 1 at 3.) Petitioner was detained for exactly six months before he was released back into the United States on December 17, 2024, by United States Immigration and Customs Enforcement ("ICE") on an order of supervision. (ECF No. 12 at 30.)

On June 16, 2025, ICE revoked Petitioner's release and detained Petitioner that same day. (*Id.*) ICE's Notice of Revocation of Release ("Notice of Revocation") appears to have been given to Petitioner at the time he was being detained. (*Id.* at 26 (addressed to Petitioner at the ICE field office on the date of detention).) The Notice of Revocation states that ICE's decision to revoke his release was based on "a review of your file and/or your personal interview on account of changed circumstances in your case," but does not identify what the "changed circumstances" were or what information led ICE to that determination. (*Id*.) Four months into his detention, Petitioner was given an informal interview on October 20, 2025. (*Id.* at 31.) Also in October, Respondents submitted a "travel packet" within the United States government to an agency "who coordinates the request for a travel document from Vietnam" for Petitioner's removal. (*Id.*) To date, Vietnam has not issued travel documents for Petitioner and Petitioner contends Vietnam has

---

[3]   The parties largely agree on the factual and procedural history. (*See* ECF No. 13 at 1.)

2

not agreed to accept him.  (ECF No. 1 at 1, 13–14.)  Petitioner has now been in continuous ICE detention awaiting removal for 5.5 months.  (*Id.* at 3.)  Since his 2024 order of removal, Petitioner has been in ICE detention for a total of 11.5 months.

## II. STANDARD OF LAW

A preliminary injunction is an extraordinary remedy.  Courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction.  *Id.* at 1134–35.

## III. ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A. Likelihood of Success on the Merits

Petitioner argues: (1) ICE unlawfully revoked his release when it failed to follow its own regulations; (2) his continued detention violates due process because his removal is not reasonably foreseeable as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) ICE's current policy and procedures relating to third-country removals are unconstitutional.  (ECF No. 1.)  The Court addresses the likelihood of success for each claim.

#### i. *Due Process for Revocation of Release*

Respondents have the authority to detain non-citizens with final orders of removal to

1 effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a non-citizen has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the non-citizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l) ("ICE Regulations"). These procedures protect important due process rights owed to non-citizens.[4] *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). "Where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful.").

Petitioner's revocation of release was governed by 8 C.F.R § 241.13(i). (*See* ECF Nos. 1 at 16 and 12 at 26.) In considering Petitioner's claim that Respondents failed to comply with ICE Regulations thereby violating due process, the Court assesses 8 C.F.R § 241.13(i)(2) (determination requirements) and 8 C.F.R § 241.13(i)(3) (procedures) in turn.

    *a)* *Determination to Revoke Release Under 8 C.F.R. § 241.13(i)(2)*

Under the ICE Regulations governing revocation of release, ICE may re-detain non-citizens "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R.

---

[4] It is fundamental that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–598 & n.5 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, (1886); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

1  § 241.13(i)(2). The "on account of" language means that the "changed circumstances" are a
2  prerequisite to revocation. *Id.*; *see also Tran v. Noem*, No. 25-cv-2391, 2025 WL 3005347, at *2
3  (S.D. Cal. Oct. 27, 2025) ("§ 241.13(i)(2) requires that this determination is made *before* the
4  removable [non-citizen] has had his release revoked.") (emphasis added). "Significant
5  likelihood" requires something more than a mere possibility. *See Vu v. Noem*, No. 1:25-cv-
6  01366-KES-SKO, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025).

7        The burden is on ICE to first establish changed circumstances that make removal
8  significantly likely. *See Vu*, 2025 WL 3114341, at *7; *see also Escalante v. Noem*, No. 9:25-cv-
9  00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on [a
10 non-citizen] each time he is re-detained would lead to an unjust result and serious due process
11 implications.").

12       As an initial matter, ICE has failed to meet its burden to show that Petitioner's revocation
13 of release was proper "on account of changed circumstances." *See* 8 C.F.R. § 241.13(i)(2).
14 Respondents do not directly address this requirement, and the Notice of Revocation merely
15 concludes that circumstances have changed for Petitioner, but it does not state reasons or the facts
16 underlying the determination. (ECF No. 12 at 26.) Neither have Respondents identified any
17 event or fact to infer that Petitioner's circumstances changed between his release on December
18 17, 2024, and the revocation on June 17, 2025.

19       The only new fact Respondents present is that ICE has submitted a travel packet to a
20 United States government agency to begin a process of requesting travel documents from
21 Vietnam. (ECF No. 12 at 3, 31.) Even if submitting a travel packet within the Government gave
22 rise to "changed circumstances" sufficient to revoke release, ICE submitted the travel packet *four*
23 *months after* Petitioner's release was revoked. It is not possible that the submission of a travel
24 packet on October 17, 2025, could possibly be the prerequisite for re-detention on June 16, 2025.
25 Without any other facts to rely on, this Court must find that there were no changed circumstances
26 in Petitioner's case to warrant the revocation of his release under ICE Regulations. 8 C.F.R. §
27 241.13(i)(2). Thus, ICE improperly revoked Petitioner's release.

28       ICE has also failed to meet its burden to show that Petitioner's deportation is significantly

1   likely in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2) (showing required under ICE

2   Regulations to properly revoke release).  Petitioner contends that Vietnam has not issued

3   Petitioner's travel documents and will not accept him, so it cannot be significantly likely that he

4   will be removed there.  (ECF No. 1 at 2.)  Respondents argue that Petitioner's deportation is

5   "imminent" and again seem to rely only on the submitted travel packet to meet its burden.  (ECF

6   No. 12 at 3–4.)  The Court cannot glean any other basis from Respondent's brief or evidence to

7   support the likelihood of removal.[5]  While submission of the travel packet may nominally

8   increase the likelihood of Petitioner's removal now, as stated above, it could not have possibly

9   supported an agency determination at the time Petitioner's release was revoked on June 17, 2025.

10   Even if the travel packet had been submitted at the time of Petitioner's re-detention —

11   rather than four months after the fact — it is not sufficient to show a significant likelihood that

12   removal is reasonably foreseeable.  The packet was submitted within the Government to

13   "coordinate" a request to Vietnam.  There is no evidence that the request for travel documents has

14   even been submitted to Vietnam, nor that Vietnam has agreed to accept Petitioner, and

15   Respondents do not provide an estimate of when Vietnam might respond or issue travel

16   documents.  It has been 1.5 months since the travel packet was submitted and Respondents do not

17   provide any evidence of progress within that time.  At this stage, Petitioner's removal is nothing

18   more than a mere possibility.  *See Vu*, 2025 WL 3114341, at *7.

19   Indeed, numerous courts, including in this district, have held that requests for travel

20   documents from Vietnam, alone, are insufficient to show a "significant likelihood" of removal

21   under 8 C.F.R. § 241.13(i)(2).  *See*, *e.g.*, *Tran v. Noem*, No. 1:25-cv-01523-TLN-CKD, 2025 WL

---

[5]   Respondents also reference and attach to their motion the November 21, 2020 Memorandum of Understanding between United States and Vietnam ("MOU"), which created a process for deporting Vietnamese citizens who entered the United States before 1995.  (ECF No. 12 at 16–21.)  Respondents do not state the purpose for which it is referenced, but the Court presumes Respondents endeavor to show that removal is possible under the MOU.  The Court cannot infer something more because the MOU does not confer any rights or obligations between the countries.  *See Nguyen*, 788 F. Supp. 3d at 151 (the Government "may only request his removal; Vietnam has total discretion whether to issue a travel document to any individual.").  Additionally, the 2020 MOU pre-dates Petitioner's 2024 order of removal and is not a "changed circumstance" or an event increasing the likelihood of Petitioner's removal.

3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that Government was "actively working on obtaining a travel document for Petitioner to Vietnam" was insufficient to show removal was reasonably foreseeable); *Phan v. Beccerra*, No. 2025 WL 1993735, at *5 (E.D. Cal. July 16, 2025) ("Respondents' intent to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future"); *Hoac*, 2025 WL 1993771, at *4 ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."); *Hyde*, 788 F. Supp. 3d at 152 ("[N]o clear information as to whether or when [Petitioner's] request was submitted to Vietnam, whether Vietnam has even acknowledged receipt of the request or otherwise responded to [Petitioner's] request, or the anticipated wait time for a response from Vietnam.").

ICE did not make the requisite sufficient showing that Petitioner's removal was significantly likely in the foreseeable future based on changed circumstances at the time it revoked his release under 8 C.F.R. § 241.13(i)(2). Accordingly, the Court finds that ICE improperly revoked Petitioner's release in violation of its own regulations and due process.

       *b)*   *Procedures to Revoke Release Under 8 C.F.R. § 241.13(i)(3)*

The ICE Regulations also lay out procedures for revocation of release. 8 C.F.R. § 241.13(i)(3). ICE must provide notice to the non-citizen of the reasons for revocation, "conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [non-citizen] an opportunity to respond to the reasons for revocation[,]" and provide review of the determination. *Id.*

Petitioner alleges that ICE did not follow these procedures. (ECF No. 1 at 17–18.) Respondents do not squarely address whether ICE complied with its regulations, but they do provide ICE's Notice of Revocation with generic form language and state that ICE provided Petitioner with an informal interview on October 20, 2025, over *four months* after his release was revoked. (ECF No. 12 at 26, 31.) If the October interview was the mandated "initial informal interview" — which is required to be conducted "promptly" upon Petitioner's re-detention — then ICE has seriously violated its procedures for revocation. *See Phan*, No. 2025 WL 1993735,

7

1   at * 3–4 (failure to provide informal interview rendered revocation of release unlawful). In fact,
2   in the Notice of Revocation, ICE stated, "[i]f you are not released after the informal interview,
3   you will receive notification of a *new review*, which will occur within approximately three
4   months of the date of this notice." (*Id.* at 26 (emphasis added).) By ICE's own statements, a
5   *second* interview should have been conducted within the timeframe in which ICE seems to have
6   conducted the *initial* interview. Thus, on the facts currently before this Court, Petitioner is likely
7   to succeed on the merits of his claim that ICE also failed to follow 8 C.F.R. § 241.13(i)(3) for the
8   revocation of his release.

        *ii.   Due Process for Continued Detention*

10   Petitioner further argues that his continued detention is unlawful because he has been in
11   custody for a total of 11.5 months since his final order of removal and his removal is not
12   reasonably foreseeable as required under *Zadvydas*. (ECF No. 1 at 13–14 (citing 533 U.S. 678).)
13   Respondents again do not directly respond, but state that Petitioner's current period of detention
14   is less than the six-month presumptively reasonable period established in *Zadvydas*. (ECF No. 12
15   at 4.)

16   In *Zadvydas*, the Supreme Court considered prolonged immigration detention after a final
17   order of removal. 533 U.S. 678 (2001). Although the Government has statutory authority to
18   detain non-citizens for removal, "once removal is no longer reasonably foreseeable, continued
19   detention is no longer authorized by statute." *Id.* at 699. The Court established a burden-shifting
20   framework to determine whether continued immigration detention is lawful and adopted a
21   presumption that immigration detention is reasonable for a period of up to six months, after the
22   final order of removal, when the detention is related to effectuating removal. *Id.* at 701. "After
23   this 6–month period, once the [non-citizen] provides good reason to believe that there is no
24   significant likelihood of removal in the reasonably foreseeable future, the Government must
25   respond with evidence sufficient to rebut that showing." *Id.*

26   Respondents imply that the *Zadvydas* presumptive period should start over with each
27   period of detention. That suggestion is wrong. The *Zadvydas* presumptive period "does not reset
28   when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from

1  detention, and then re-detains him again." *Sied v. Nielsen*, 2018 WL 1876907, at *6 (N.D. Cal.
2  Apr. 19, 2018); *see also Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025)
3  ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative,
4  motivated, in part, by a concern that the federal government could otherwise detain noncitizens
5  indefinitely by continuously releasing and re-detaining them."). Finding the presumptive period
6  resets with each detention would allow the Government to circumvent basic due process
7  protections, the reasonable foreseeability requirement under *Zadvydas*, and federal regulations.

8  Here, Respondents have detained Petitioner for a total of 11.5 months since his final order
9  of removal on June 17, 2024, well beyond six months. Thus, they have lost the benefit of the
10 *Zadvydas* presumption. This Court has found there is no significant likelihood of removal in the
11 reasonably foreseeable future, therefore, Petitioner has met his burden. As a result, Respondents
12 must produce evidence rebutting Petitioner's showing for his continued detention to be lawful.
13 *See Zadvydas*, 533 U.S. at 701. However, Respondents provide no credible evidence that
14 removal is reasonably foreseeable. Respondents have had nearly 18 months to effectuate
15 Petitioner's removal while he was in ICE detention or under an order of supervision awaiting
16 removal. Respondents do not provide an explanation as to why removal was not effectuated last
17 year but is now both possible and "imminent." A request for travel documents within the
18 Government does not meaningfully move Petitioner's case toward removal. *See id.* (finding
19 indefinite immigration detention is unlawful and "for detention to remain reasonable, as the
20 period of . . . confinement grows, what counts as the 'reasonably foreseeable future' conversely
21 would have to shrink."). In sum, the Court finds that Petitioner's removal is not reasonably
22 foreseeable and his continued detention is unlawful.

### iii. Third-Country Removal

24 Finally, Petitioner argues ICE's new policies and procedures related to third-country
25 removal are unlawful and he may be subjected to such removal. (ECF No. 1 at 3–6, 14–16.)
26 Respondents do not address these arguments and do not provide assurances that they are not
27 seeking third-country removal for Petitioner. (*See* ECF No. 12.)

28 Third-country removals involve deportation to countries that are not identified in a final

9

1    removal order and to which the non-citizen has no connection.  *See* 8 U.S.C. § 1231(b)(2)(E)(vii).
2    ICE's July 9, 2025 guidance on this issue provides that if the United States has received credible
3    diplomatic assurances from a target third country that the non-citizen will not be persecuted or
4    tortured, then they may be removed "*without the need for further procedures*."  *Vu*, 2025 WL
5    3114341, at *8 (quoting ICE July 9, 2025 third-party removal policy) (emphasis added).  Where
6    diplomatic assurances are not secured, ICE will provide notice to the non-citizen, but removal
7    could occur within as little as six hours and ICE "will *not* affirmatively ask whether the [non-
8    citizen] is afraid of being removed to the country of removal."  *Id.*  If ICE follows this policy for
9    Petitioner's removal, he would have no meaningful opportunity to seek relief in any court before
10   he is removed to a third country.  *See id*.

11          Numerous courts in this Circuit have held that ICE's third-country removal policy is
12   unconstitutional and this Court agrees with those well-reasoned decisions.  *See, e.g.*, *Vu*, 2025
13   WL 3114341, at *9; *Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-cv-06254-
14   KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-
15   1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).  "The Fifth Amendment
16   guarantees due process in deportation proceedings."  *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267,
17   1270 (9th Cir. 2001).  "Failing to notify individuals who are subject to deportation that they have
18   the right to apply for asylum in the United States and for withholding of deportation to the
19   country to which they will be deported violates the constitutional right to due process."
20   *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "In the context of country of removal
21   designations, last minute orders of removal to a country may violate due process if an immigrant
22   was not provided an opportunity to address his fear of persecution in that country."  *Nguyen v.*
23   *Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting
24   *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).  Thus, Petitioner is likely to succeed on the
25   merits of his third-country removal claim.

26          B.  <u>Irreparable Harm</u>

27          The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed
28   on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE

detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has been in ICE custody for a total of 11.5 months awaiting removal. (ECF No. 1 at 2–3.) Respondents argue that Petitioner has not suffered irreparable harm because his current detention period has not yet reached six months and such a period of detention is "appropriate where removal is probable." (ECF No. 12 at 4.) However, the Court has found that Petitioner's removal is not reasonably foreseeable — in fact, it is not known to this Court whether Vietnam will *ever* issue travel documents for Petitioner. Therefore, Petitioner is being unlawfully detained and will be a risk indeterminate detention absent a preliminary injunction.

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). In addition to harms imposed by lengthy immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claims. Thus, the Court finds Petitioner has suffered irreparable harm.

### C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). The public also has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the

1    public interest to prevent the violation of a party's constitutional rights.")

2    As discussed above, Petitioner has shown he is likely to succeed in proving that
3    Respondents have violated federal laws depriving him of his constitutional rights and his liberty.
4    Additionally, Respondents are not harmed by their sworn duty to follow the law. *See Zepeda*,
5    753 F.2d at 727.  Thus, the balance of equities and public interest factors weigh in Petitioner's
6    favor.

7    **IV.   CONCLUSION**

8    Therefore, the Court GRANTS Petitioner's motion and issues the preliminary injunction
9    set forth below.  IT IS HEREBY ORDERED that:

10   1.   Petitioner's motion for injunctive relief (ECF No. 1) is GRANTED.
11   2.   To return to the status quo ante, Respondents must IMMEDIATELY RELEASE
12   Petitioner under the same conditions he was released previously on his December 2024 order of
13   supervision.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D.
14   Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending
15   controversy.").  Respondents must file a notice certifying compliance with this provision of the
16   Court's Order by December 5, 2025.

17   3.   Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner
18   unless they obtain a travel document for his removal to Vietnam and until they follow all
19   procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and
20   regulatory procedures.

21   4.   Respondents are ENJOINED AND RESTRAINED from removing Petitioner to
22   any country other than Vietnam, unless they provide the following process:

23      a.  written notice to both Petitioner and Petitioner's counsel in a language Petitioner
24         can understand;
25      b.  following the notice, Petitioner must be provided a meaningful opportunity, and a
26         minimum of ten days, to raise a fear-based claim for protection under the
27         Convention Against Torture prior to removal;
28      c.  if Petitioner is found to have demonstrated "reasonable fear" of removal to the

               designated country, Respondents must move to reopen Petitioner's immigration proceedings;

        d.  if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, Respondents must afford Petitioner a meaningful opportunity, and a minimum of fifteen days, to seek to reopen his immigration proceedings.

5.       The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

6.       This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: December 4, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

13